**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH DAKOTA**

| IN RE:<br><br>RANDAL KENT HANSEN,<br>aka Randy Hansen,<br>aka Randal Hansen<br>SSN/ITIN xxx-xx-3591<br><br>DEBTOR. | CASE NO. 14-10071<br>CHAPTER 11<br><br>**UNITED STATES TRUSTEE'S MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 OR, IN THE ALTERNATIVE, TO DISMISS CHAPTER 11 CASE** |
|---|---|

The United States Trustee for Region 12, through the undersigned Assistant United States Trustee, hereby moves the Court to convert the above chapter 11 case to chapter 7 or, in the alternative, to dismiss the case. In support of said motion the United States Trustee alleges as follows:

1. Debtor filed a voluntary petition under Chapter 11 on May 15, 2014.

2. In addition to the instant chapter 11 case, Debtor is the defendant in *USA v. Hansen*, 4:13-cr-40053-KES. The criminal case followed an indictment for mail and wire fraud stemming from Debtor's operation of or involvement in an alleged Ponzi scheme.

3. On January 22, 2014, the jury returned a verdict of guilty in Debtor's criminal proceeding. Based on the jury's verdict, and following the applicable post-conviction motions and proceedings, on May 21, 2014, the Court entered a "Judgment in a Criminal Case." (Criminal docket # 66.) Pursuant to the criminal judgment Debtor was sentenced to a term of incarceration of 108 months. In addition to the period of incarceration Debtor will be subject to an order of restitution. As of the date of this Motion the Court had not determined the amount of restitution; however in its sentencing memorandum the government argued the amount of loss was properly estimated at $18,371,909.97.

(Criminal docket # 64, page 3.) Any amount awarded as a criminal restitution judgment will be non-dischargeable pursuant to 11 U.S.C. § 523(a)(13).

4. Debtor's conviction recommended he be sentenced to the federal facility at Yankton, SD. However, as of the date of the date of the first meeting of creditors pursuant to 11 U.S.C. § 341 Debtor was instead incarcerated at the federal facility at Duluth, MN. Absent reversal on appeal, Debtor will likely remain at the facility in Duluth for the duration of his sentence.

5. Due to his incarceration Debtor did not appear at the first meeting of creditors. Rather, Debtor's relative, Ryan Reiner, testified on Debtor's behalf. Mr. Reiner testified pursuant to a power of attorney prepared by bankruptcy counsel.

6. On Schedule B Debtor is listed as having a 1% interest in "Hansen Holdings LP." Hansen Holdings, LP owns title to approximately 3,000 acres of farm ground currently in production in South Dakota. At the 341 meeting Debtor's representative identified Debtor's non-filing spouse and children as having the remaining 99% interest in Hansen Holdings. Debtor's representative testified that Debtor's family acquired their interest in Hansen Holdings via transfer believed to have been done in 2007.

7. By the United States Trustee's calculation, non-exempt assets in Debtor's case total $331,044.88. The majority of those reflect the estimated value of Debtor's interest in closely held or family controlled corporations. The only source of payment under a chapter 11 plan beyond those assets is the alleged $40,000 in yearly farming lease income reflected on Schedule I. Debtor's representative testified that the $40,000 figure was an estimate based solely on crop in production for this crop year. Even assuming the full $40,000 was available each year; such amount represents only $240,000 over the

course of a 60-month plan. Thus, under a best case scenario, and without administrative or other expenses, over a 60-month plan Debtor would have assets totaling a maximum of $571,044.88 (331,044.88 + 240,000 = 571,044.88).

8. In response to question 10 of the Statement of Financial Affairs, Debtor reveals a number of transfers between Debtor, his non-filing spouse and Debtor's son-in-law. These transfers occurred on the eve of the chapter 11 filing and are in addition to other transfers, like Debtor's interest in Hansen Holdings, which occurred prior to the filing.

9. In response to question 3b of the Statement of Financial Affairs, Debtor reveals a payment of $26,500 to Maurice Secarz. At the 341 Mr. Secarz was identified as Debtor's civil and criminal attorney. The payment was allegedly for attorney fees incurred prior to Debtor's chapter 11 filing. Debtor's representative testified the payment was made on the eve of the chapter 11 filing.

10. On Schedule E, Debtor lists a $700,000 priority unsecured debt owed to the Internal Revenue Service. Debtor's representative testified that this obligation was the result of the IRS's disallowance of certain previously claimed deduction for investment losses. The losses were disallowed as a result of Debtor's criminal fraud conviction. Despite restitution being non-dischargeable, under 11 U.S.C. § 507(a)(8) the claim of the IRS would have priority over the general unsecured (restitution) creditors. Thus, any chapter 11 plan would have to provide for the complete satisfaction of the IRS obligation before making any payment to the general unsecured (restitution) creditors.

11. As reflected in paragraph 7 above, based on the Schedules the United States Trustee estimates Debtor's assets available for distribution under a 60-month chapter 11

plan at $571,044.88. Such amount would be insufficient to meet even the Scheduled priority debt owed to the IRS.

12. Under "special conditions of supervision" section of the criminal judgment it provides that "[t]he defendant shall apply all monies received from income tax refunds, judgments, and any other anticipated or unexpected financial gains to the outstanding court-ordered financial obligations." (Criminal docket # 66, page 5 of 7, paragraph 2.) The United States Trustee asserts that any payments on administrative or priority claims proposed in a chapter 11 plan would be in direct contravention of that provision of the criminal judgment.

13. Pursuant to 11 U.S.C. § 1112(b), the court for cause may convert a case to chapter 7 or may dismiss a case "whichever is in the best interests of creditors and the estate." (11 U.S.C. § 1112(b)(1).) If, instead, the court were to determine that conversion or dismissal is not appropriate it must specifically identify unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors. The court must also determine that there is a reasonable likelihood that a plan will be confirmed. (11 U.S.C. § 1112(b)(2)(A).)

14. The United States Trustee submits that it would be in the best interest of creditors to convert Debtor's case based on the following:

14A. According to Schedule I, Debtor's only income is $1,122 from social security. Thus, absent the contribution of $27,715.37 from the non-filing spouse, Debtor would be unable to meet the monthly expenses listed on Schedule J much less to make payments under a plan.

14B. Pursuant to the terms of his sentencing Debtor will be incarcerated

for the entire term of a 60-month chapter 11 plan. Even if credited for good behavior sentencing reduction (2 months per year served under the federal system), Debtor would be incarcerated for ¾ of even a 10-year chapter 11 plan.

14C. As 11 U.S.C. § 523(a)(13) prevents the discharge of the any restitution judgment resulting from the criminal conviction, Debtor will not benefit from a discharge in this chapter 11 case.

14D. Preventing the "race to the courthouse" which would allow creditors to receive inequitable distribution based on when they brought suit can be accomplished by a chapter 7 proceeding.

14E. The restitution creditors would be prejudiced by a chapter 11 plan which must, pursuant to 11 U.S.C. § 507(a), pay the administrative and priority claims prior to any payment on their general unsecured (restitution) claims.

14F. The Statement of Financial Affairs discloses a number of transfers and transactions in proximity to the bankruptcy filing. Additional transfers, including those involving Debtor's interest in 3,000 in farmland, occurred during the period that Debtor was involved in the alleged Ponzi scheme. Conversion to chapter 7 would allow those transactions to be examined by an independent chapter 7 trustee. Like Debtor, a chapter 7 trustee would be bound by the provisions of § 507(a). Unlike Debtor, the chapter 7 trustee is motivated to examine and potentially contest transfers or estate planning unlikely to receive credible examination by Debtor. Should the chapter 7 trustee determine it is not possible to contest the transfers or obtain assets beyond those necessary to pay priority claims, the restitution creditors could at least take solace in the fact that

said transactions were fully and fairly examined by an independent party.

14G. Debtor has been convicted in Federal Court of fraud related offenses and therefore should not serve as Debtor-in-Possession, with the powers and duties of a trustee, in a chapter 11 case.

15. Under 11 U.S.C. § 1112(b), a Chapter 11 bankruptcy case may be dismissed for cause. The Code provides a non-exhaustive list of sixteen different acts, omissions, or other circumstances that constitute "cause" for dismissal or conversion. 11 U.S.C. § 1112(b)(4)(A)–(P). *In re SGL Carbon Corp.*, 200 F.3d at 160 (finding that the list is not exhaustive). Ultimately, however, the determination of cause rests within the discretion of the court. *See In re Tosh*, 2012 Bankr.LEXIS 5828, at *5 (Bankr. E.D. N.C. Dec. 19, 2012) ("[T]he enumerated list in § 1112(b) is not exclusive and the decision to convert or dismiss a case remains within the discretion of the court." (quoting *In re Forbes Transp., LLC*, 2009 Bankr.LEXIS 841, at *2–3 (Bankr. E.D. N.C. Apr. 2, 2009)); *In re BH S & H Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D. N.Y. 2010) ("Bankruptcy judges have wide discretion to determine whether cause exists to dismiss or convert a case under section 1112(b).").

16. The party moving for conversion or dismissal has the burden to establish "cause" by a preponderance of the evidence. *In re Forbes Transp., LLC*, 2009 Bankr.LEXIS 841, at *3 (citing *In re Woodbrook Associates*, 19 F.3d 312, 317 (7th Cir. 1994)).

17. Although section 1112(b) does not explicitly require that cases be filed in "good faith," courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal. *In re Marsch*, 36 F.3d at 828. The good faith requirement does not depend on a debtor's subjective intent, but rather

"encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings." *In re Marshall*, 721 F.3d 1032 (9th Cir. 2013). The question of a debtor's good faith "depends on an amalgam of factors and not upon a specific fact." *Idaho Dep't of Lands v. Arnold* (*In re Arnold* ), 806 F.2d 937, 939 (9th Cir.1986)). "[T]he courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions.'" *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va.* (*In re Phoenix Piccadilly, Ltd.*), 849 F.2d 1393, 1394 (11th Cir.1988) (quoting *Albany Partners, Ltd. v. Westbrook* (*In re Albany Partners, Ltd.*), 749 F.2d 670, 674 (11th Cir.1984)). A "[d]ebtor bears the burden of proving that the petition was filed in good faith." *Leavitt v. Soto* (*In re Leavitt* ), 209 B.R. 935, 940 (9th Cir. BAP 1997) (citing *In re Powers*, 135 B.R. 980, 997 (Bankr.C.D.Cal.1991)).

18. The court has "wide discretion" to "use its equitable powers" to "make an appropriate disposition of the case[.]" *In re Camden Ordnance*, 245 B.R. at 803 (citing the legislative history of § 1112(b)). Although each chapter 11 case is to some extent unique, and unusual circumstances may exist in any particular case regardless of its size or complexity, the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding. *In re Hinesley Family Ltd. Partnership No. 1*, 460 B.R. 547 (Bankr. D. MT 2011).

19. To protect the interests of creditors, the Court should convert Debtor's case to chapter 7. In the alternative, rather than continuing to go forward under chapter 11, the Court should dismiss this case.

WHEREFORE the United States Trustee respectfully requests the Court convert Debtor's chapter 11 bankruptcy case no. 14-10071.

**Daniel M. McDermott**
United States Trustee
Region 12

Dated: June 11, 2014.

By: /s/ James L. Snyder
**James L. Snyder**
Assistant United States Trustee
314 S. Main Avenue, Suite 303
Sioux Falls, SD 57104
Tel: (515) 284-4982
Fax: (515) 284-4986
E-mail: James.L.Snyder@usdoj.gov